P6PRCARp

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                              11 Cr. 205 (AKH)

 5   HUGO ARMANDO CARVAJAL BARRIOS,
        a/k/a "El Pollo,"
 6                                           Plea
                 Defendant.
 7
     ------------------------------x
 8
                                             New York, N.Y.
 9                                           June 25, 2025
                                             2:30 p.m.
10

11   Before:

12                   HON. ALVIN K. HELLERSTEIN,

13                                           District Judge

14                            APPEARANCES

15   JAY CLAYTON
          United States Attorney for the
16        Southern District of New York
     BY:  KAYLAN LASKY
17        NICHOLAS BRADLEY
          KEVIN SULLIVAN
18        Assistant United States Attorneys

19   LAW OFFICES OF ROBERT FEITEL
          Attorneys for Defendant
20   BY:  ROBERT FEITEL

21   Also Present:
     Special Agent Michael Stanton, DEA
22   Special Agent Sarah Devine-Powell, DEA
     Humberto Garcia, Interpreter (Spanish)
23   Jill Hoskins, Interpreter (Spanish)

24

25
```

P6PRCARp

1          THE COURT:  Be seated, please.

2          (Case called)

3          MR. BRADLEY:  Good afternoon, your Honor.  Nicholas

4  Bradley, Kaylan Lasky, and Kevin Sullivan for the government.

5  We're joined at counsel table by Paralegal Specialist Sabrina

6  Jim and DEA Special Agents Michael Stanton and Sarah

7  Devine-Powell.

8          THE COURT:  Good afternoon.  You're all alone, Robert.

9          MR. FEITEL:  Good afternoon, your Honor.  I left my

10  team at home.  I came by myself.

11          Robert Feitel for defendant, Hugo Carvajal.

12  Mr. Carvajal is present, and he has indicated that he can hear

13  the translation into his native language of Spanish.  He's

14  ready to proceed, your Honor.

15          THE COURT:  Thank you, Mr. Feitel.

16          We have a Spanish-English interpreter, Ms. Hoskins and

17  Humberto Garcia.  OK.  There we go.

18          I understand, Mr. Carvajal, that you expressed an

19  interest to change your plea from not guilty to guilty.  Is

20  that correct?

21          THE DEFENDANT:  That is correct, your Honor.

22          THE COURT:  And the government has given through

23  counsel, to Mr. Carvajal what we call a *Pimentel* letter

24  outlining the government's opinions with regard to a potential

25  plea if Mr. Carvajal would plead guilty to all of the four

P6PRCARp

1   counts of the superseding indictment.  That letter is June 23,

2   2025.

3              Mr. Feitel, have you received that letter?

4              MR. FEITEL:  Yes, I have, your Honor, and I've

5   reviewed its contents with my client.

6              THE COURT:  OK.  Thank you.  All right.  In order to

7   accept a guilty plea, Mr. Carvajal, I have to administer an

8   oath to you requiring you to answer all questions put to you

9   with the truth, the whole truth, and nothing but the truth.  If

10  you fail to do that, you expose yourself to more penalties.  So

11  the first question is whether you wish to proceed under oath.

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  If you would please, Ms. Joseph will

14  administer an oath to you.

15             (Defendant sworn)

16             THE DEPUTY CLERK:  Thank you, you may be seated.  When

17  you are seated, please state your full name for the Court.

18             THE DEFENDANT:  Hugo Armando Carvajal-Barrios.

19             THE COURT:  How old are you, Mr. Carvajal?

20             THE DEFENDANT:  Sixty-five years old.

21             THE COURT:  Are you married?

22             THE DEFENDANT:  Divorced, your Honor.

23             THE COURT:  Do you have any dependent children?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  How old are they?

P6PRCARp

1          THE DEFENDANT:  I have three children from my

2    marriage.  I have a 39-year-old daughter --

3          THE COURT:  Excuse me.  I asked only for dependent

4    children, that is, under the age of 21.  Do you have any

5    children under the age of 21?

6          THE INTERPRETER:  The interpreter would like to have

7    the last part of what your Honor said repeated.  How long are

8    you seeking?

9          THE DEFENDANT:  I have three minor children, a

10   daughter who is 13 years old; I have one who is nine, and then

11   a daughter who is seven years old, and two adopted children who

12   are ten years old.

13         THE COURT:  Do they live with their mother or mothers?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  I understand that you are a citizen of

16   Venezuela, is that correct?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  And you are not a citizen of the United

19   States?

20         THE DEFENDANT:  No, your Honor.

21         THE COURT:  You have a right to consult with counsel

22   with the consulate of Venezuela or any other country before I

23   proceed further.  Do you wish to take advantage of that right?

24         THE DEFENDANT:  No, your Honor.

25         THE COURT:  So I may proceed?  You waive the right to

P6PRCARp

1      consult with consulate?

2              In order for me to accept the guilty plea, as I said

3      before, I have to ask you a number of questions.  The purpose

4      of these questions is to make sure you understand the four

5      counts that have been alleged against you in the superseding

6      indictment; that your plea is voluntary; that you understand

7      the consequences of the plea; and that there is an independent

8      basis in fact to support the plea.  So I'll proceed with these

9      questions.

10             First, since these allegations make allegations

11     regarding narcotics and since you are not a citizen of the

12     United States, in likelihood if you plead guilty and are found

13     guilty, you are likely to be deported from the United States.

14     Do you understand that?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Would the government summarize one by one

17     the four counts of which Mr. Carvajal has been indicted?

18             MR. BRADLEY:  Yes, your Honor.  Just a brief summary?

19             THE COURT:  A summary would be good.

20             MR. BRADLEY:  Yes, sir.

21             THE COURT:  Face Mr. Carvajal because he is the one

22     who has to understand it.

23             MR. BRADLEY:  Yes, your Honor.

24             Your Honor, Count One charges the defendant with

25     conspiracy to commit narco-terrorism involving 5-kilograms or

P6PRCARp

1    more of cocaine in at least in or about 1999 up to and

2    including in or about 2014 --

3              THE COURT:  Mr. Bradley, this has to be interpreted

4    line by line, so phrase it so it can be interpreted.  Start

5    again.

6              MR. BRADLEY:  Your Honor, Count One charged the

7    defendant with participating in a conspiracy to commit

8    narco-terrorism involving 5 kilograms and more of cocaine from

9    at least 1999 up to and including in or about 2014.  That's in

10   violation of a statute called Title 21 of the United States

11   Code, Section 960(a).

12             THE COURT:  You understand that count, Mr. Carvajal?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  You've read it before, have you not?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And you've discussed it with Mr. Feitel?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Count Two.

19             MR. BRADLEY:  Thank you.

20             Count Two of the indictment charges the defendant with

21   participating in a conspiracy from at least in or about 1999 up

22   to and including in or about 2019 to import 5 kilograms and

23   more of cocaine into the United States and into the customs

24   territory of the United States; to manufacture, distribute and

25   possess with intent to distribute 5 kilograms and more of

P6PRCARp

1    cocaine; intending, knowing, and having reasonable cause to

2    believe that that cocaine would be unlawfully imported in the

3    United States; and to manufacture, distribute, and possess with

4    intent to distribute 5 kilograms and more of cocaine on board

5    an aircraft registered in the United States.  That's in

6    violation of Title 21 of the United States Code, Section 963.

7         THE COURT:  Are you familiar with that count,

8    Mr. Carvajal?

9         THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  And you've discussed it with Mr. Feitel?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Count Three.

13         MR. BRADLEY:  Count Three of the indictment charges

14    the defendant with possession of machine guns and destructive

15    devices from at least in or about 1999 up to and including in

16    or about 2019 during and in relation to and in furtherance of

17    the drug trafficking crimes charged in Counts One and Two of

18    the superseding indictment.  That's in violation of Title 18 of

19    the United States Code, Section 924(c).

20         THE COURT:  Similarly, Mr. Carvajal, are you aware of

21    that count?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And you've discussed that with Mr. Feitel?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Count Four.

P6PRCARp

1          MR. BRADLEY:  Count Four charges the defendant with

2    participating in a conspiracy from at least in or about 1999 up

3    to and including in or about 2019 to possess machine guns and

4    destructive devices during and in relation to and in

5    furtherance of the drug trafficking crimes charged in Counts

6    One and Two of the superseding indictment.  That's in violation

7    of Title 18 of the United States Code, Section 924(o).

8          THE COURT:  And are you familiar with that count?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  And you've discussed that with Mr. Feitel?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Thank you, Mr. Bradley.

13          Tell me about your education, Mr. Carvajal.  How far

14    in school did you go?

15          THE DEFENDANT:  College, your Honor.

16          THE COURT:  Did you finish college?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  And you have the ability to read and

19    understand Spanish?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Any other languages?

22          THE DEFENDANT:  No.

23          THE COURT:  And you, with the aid of an interpreter,

24    are able to understand these proceedings?

25          THE DEFENDANT:  Perfectly fine.

P6PRCARp

1              THE COURT:  OK.  Coming into today, have you had any

2    narcotics or medicines or anything else that can blur your

3    thinking?

4              THE DEFENDANT:  No, your Honor.

5              THE COURT:  Are you clear minded?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Have you discussed this case and its four

8    counts with Mr. Feitel?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Are you satisfied with his services?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Has anyone put you into fear causing you

13   to want to plead guilty?

14             THE DEFENDANT:  No, your Honor.

15             THE COURT:  Has anyone made any promises to you of

16   what would happen if you were to plead guilty?

17             THE DEFENDANT:  No, your Honor.

18             THE COURT:  Are you offering to plead guilty because

19   it's your own decision with the help of Mr. Feitel's advice?

20             THE DEFENDANT:  Yes, your Honor.  It's because of the

21   comment that you made at the last hearing.

22             THE COURT:  What comment was that?

23             THE DEFENDANT:  That I would be able to plead guilty

24   or not if I wished.

25             THE COURT:  Well, you do understand that you were not

P6PRCARp

1    being compelled to plead guilty?

2            THE DEFENDANT:  I understand, your Honor.

3            THE COURT:  And you understand that you have a full

4    right under the Constitution of the United States to plead not

5    guilty and to require the government to prove guilt against you

6    beyond a reasonable doubt and to the satisfaction unanimously

7    of a jury?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  So is it because I said that you could

10   plead guilty that you are pleading guilty today or because you

11   want to plead guilty?

12           THE DEFENDANT:  Because I want to, your Honor.

13           THE COURT:  It's your decision.

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  And is it your belief that I'm compelling

16   you in any way to plead guilty?

17           THE DEFENDANT:  No, your Honor.

18           THE COURT:  The decision to plead guilty is your

19   voluntary act, is that right?

20           THE DEFENDANT:  Right.

21           THE COURT:  Without any promises having been made to

22   you, right?

23           THE DEFENDANT:  Right, your Honor.

24           THE COURT:  OK.  Now, do you understand that under the

25   Constitution you have a presumption of innocence, and that you

P6PRCARp

1    cannot be found guilty of the crimes charged except if the

2    government proves your guilt beyond a reasonable doubt to the

3    satisfaction unanimously of a jury?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  And do you understand that you have a

6    right to counsel in all aspects of this criminal case and that

7    if you can't afford a lawyer, the government will provide a

8    lawyer free of charge?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  And with the help of the lawyer, you could

11   confront all witnesses against you.  You can cross-examine

12   them.  You can require anyone having favorable information to

13   come to the trial and testify whether that person wishes to do

14   so or not, and that you yourself could testify if you wish to.

15   But if you didn't wish to, you won't have to, and no inference

16   could be drawn against you.

17           THE DEFENDANT:  I understand, your Honor.

18           THE COURT:  But if you plead guilty, you give up those

19   rights.  Do you understand?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Now, Mr. Bradley, would you tell

22   Mr. Carvajal what is the maximum exposure that he faces with

23   regard to these four counts?

24           MR. BRADLEY:  Yes, your Honor.  Would you prefer I

25   face the defendant during that?

P6PRCARp

1          THE COURT:  Yes, I do.

2          MR. BRADLEY:  OK.  So first, for Count One, the

3    narco-terrorism conspiracy, that carries a maximum term of

4    imprisonment of life, a mandatory minimum term of 20-years

5    imprisonment, a maximum term of supervised release of life, a

6    mandatory minimum term of supervised release of five years, and

7    a maximum fine comprised of the greatest of $250,000, twice the

8    gross pecuniary gain derived from the offense or twice the

9    gross pecuniary loss to persons other than the defendant

10   resulting from the offense, and a mandatory $100 special

11   assessment.

12          THE COURT:  Go onto Count Two.

13          MR. BRADLEY:  Count Two, that's the narcotics

14   importation conspiracy.  That carries a maximum term of

15   imprisonment of life, a mandatory minimum term of imprisonment

16   of ten years, a maximum term of supervised release of life, a

17   mandatory minimum term of supervised release of five years, and

18   a maximum fine of the greatest of $10 million, twice the gross

19   pecuniary gain derived from the offense, or twice the gross

20   pecuniary loss to persons other than the defendant resulting

21   from the offense, and a $100 mandatory special assessment.

22          THE COURT:  Count Three.

23          MR. BRADLEY:  Count Three carries a maximum term of

24   imprisonment of life, a mandatory minimum term of imprisonment

25   of 30 years, which is to run consecutively to any other term of

P6PRCARp

imprisonment imposed, a maximum term of supervised release of

five years, a maximum fine of the greatest of $250,000, twice

the gross pecuniary gain derived from the offense, or twice the

gross pecuniary loss to a person other than the defendant, and

a mandatory $100 special assessment.

THE COURT:  Is there a minimum for supervised release

in Count Three?

MR. BRADLEY:  No, your Honor.

THE COURT:  Count Four.

MR. BRADLEY:  As to Count Four, that carries a maximum

term of imprisonment of life, a maximum term of supervised

release of five years, and a maximum fine of the greatest of

$250,000, twice the gross pecuniary gain derived from the

offense, or twice the gross pecuniary loss, and a mandatory

special assessment.  So in total, the maximum sentence of

incarceration on Counts One, Two, Three and Four of the

superseding indictment is life imprisonment with a mandatory

minimum term of 20-years imprisonment, to be followed by an

additional mandatory minimum term of 30-years imprisonment on

Count Three, which must run consecutively to any other term of

imprisonment imposed.  So the aggregate or total mandatory

minimum term of incarceration is 50 years imprisonment.

THE COURT:  Are you aware of these statutory

penalties, Mr. Carvajal?

THE DEFENDANT:  Yes, your Honor.

P6PRCARp

1          THE COURT:  I have a certain amount of discretion.  I

2    can't give you less than the mandatory minimum for each count,

3    and, of course, I can't give you more than life.  I don't know

4    what I would do with this case or how I will sentence.  It

5    could be that you will be disappointed by my sentence, but if I

6    accept your sentence today, you are bound by it, whether you're

7    disappointed or not.  Do you understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Next, Mr. Bradley, would you tell

10   Mr. Carvajal what are the requirements of proof for each of

11   these four counts?

12         MR. BRADLEY:  Yes, your Honor.

13         THE COURT:  And then how you would tend to prove each

14   of the counts.

15         MR. BRADLEY:  Yes, your Honor.  I'll start by going

16   through the elements of each count.

17         THE COURT:  Yes.

18         MR. BRADLEY:  As to Count One, the narco-terrorism

19   conspiracy, this crime has three elements that the government

20   must prove beyond a reasonable doubt:

21         First, that there was an unlawful agreement or

22   understanding between two or more people to distribute

23   5 kilograms or more of cocaine or possess with the intent to

24   distribute 5 kilograms and more of cocaine, knowing or

25   intending to provide something of pecuniary value to the FARC;

P6PRCARp

1    that's the revolutionary armed forces of Colombia;

2         second, that the defendant knowingly and intentionally

3    joined in that agreement; and

4         third, that one of the jurisdictional elements of the

5    statute is satisfied; here specifically, that after the conduct

6    required for the offense occurred, an offender was brought into

7    or found in the United States.  That's for Count One.

8         Count Two, that's the narcotics importation

9    conspiracy.  This crime has three elements:

10         First, that there was an unlawful agreement or

11   understanding between two or more persons to import cocaine

12   into the United States, or to manufacture or distribute cocaine

13   while knowing or intending that it would be unlawfully imported

14   into the United States, or to manufacture, distribute, or

15   possess with intent to distribute cocaine onboard an aircraft

16   registered in the United States;

17         second, that the defendant knowingly and intentionally

18   joined in that agreement; and

19         third, that the conspiracy or agreement involved at

20   least 5 kilograms or more of cocaine.  That's Count Two.

21         As to Count Three, this is the charge of using,

22   carrying, and possessing machine guns and destructive devices.

23   This crime has three elements:

24         First, that the defendant committed the drug

25   trafficking crimes charged in Counts One and Two of the

P6PRCARp

1    superseding indictment, the elements of which I've just

2    described;

3        second, that the defendant knowingly used or carried a

4    firearm during and in relation to the drug trafficking charges

5    charged in Counts One and Two, or possessed a firearm in

6    furtherance of drug trafficking crime as charged in Counts One

7    and Two, or aided and abetted another in such use, carrying, or

8    possession; and

9        third, that the offense involved a machine gun or

10   destructive device.  That's Count Three.

11       As to Count Four, this is the conspiracy to use or

12   carry machine guns or destructive devices.  This crime has

13   three elements:

14       First, that there was an agreement or understanding

15   between two or more persons to use or carry a firearm during

16   and in relation to the drug trafficking crimes charged in

17   Counts One and Two, or to possess a firearm in furtherance of

18   the drug trafficking crimes charged in Counts One and Two;

19       second, that the defendant knowingly and intentionally

20   joined in that agreement; and

21       third, that the offense involved the machine gun or

22   destructive device.  That's for Count Four.

23       In addition to that, the government would need to

24   prove by a preponderance of the evidence that venue is

25   appropriate in the Southern District of New York.  And should

1    the case proceed to trial --

2            THE COURT:  How would you go about proving all these

3    propositions?

4            MR. BRADLEY:  Yes, your Honor.

5            If the case were to proceed to trial, the government

6    would expect to present, among other things, the following

7    evidence:

8            Testimony from multiple witnesses describing the

9    defendant engaging in large-scale cocaine trafficking,

10   including deals involving planes and boats filled with

11   thousands of kilograms of cocaine leaving Venezuela under the

12   defendant's protection bound for the United States; testimony

13   from witnesses regarding the defendant's cocaine trafficking

14   with the FARC, and agreements to supply the FARC with weapons,

15   including automatic rifles and explosive devices, including in

16   exchange for cocaine;

17           testimony from expert witnesses regarding

18   international drug trafficking routes, the cocaine

19   manufacturing process, and the capabilities of machine guns and

20   destructive devices used by the defendant and others in

21   furtherance of their cocaine trafficking;

22           electronic evidence seized from a FARC encampment

23   showing correspondence between FARC leadership describing

24   meetings with defendant and his agreement to supply the FARC

25   with weapons;

P6PRCARp

1          testimony from a witness regarding the defendant

2     orchestrating the kidnapping and torture of that witness before

3     he could travel out of Venezuela to meet with U.S. law

4     enforcement regarding FARC-related drug trafficking;

5          law enforcement testimony regarding how a joint

6     offender and coconspirator of the defendant was first brought

7     to the Southern District of New York; and

8          finally, photos, law enforcement testimony, and other

9     evidence regarding the seizure in Mexico of over 5 tons of

10    cocaine on a plane that was dispatched by the defendant and his

11    coconspirators from Venezuela to Mexico.

12          THE COURT:  And venue?

13          MR. BRADLEY:  As to venue, your Honor, the government

14    would anticipate introducing law enforcement testimony showing

15    that a joint offender and coconspirator of the defendant was

16    first brought to the United States into the Southern District

17    of New York, satisfying the first-brought statute.  That's

18    Title 18 of the United States Code, Section 3238.

19          THE COURT:  Mr. Carvajal, returning to the issue of

20    sentencing, the *Pimentel* letter, which I mentioned before,

21    spells out in pages 2 and 3 the various considerations that are

22    set out in the sentencing guidelines and that help me consider

23    the appropriate sentence to be given to you.  They're not

24    binding.  They're suggestive of what I have to do.  I'd like to

25    go over those with you starting on page 2 at the very bottom

P6PRCARp

1    and going on to page 3.

2            First, instead of separately considering the counts

3    that are roughly the same, Counts One, Two and Four are grouped

4    together, and together they add up to an accusation of an

5    importation of 450 kilograms of cocaine at least with a base

6    level of 38.  Now, these guidelines rank all federal offenses

7    from the most minor to the most severe.  The level appropriate

8    to this count is considered number 38, which is very near the

9    top, very near the most severe.

10            Because firearms were possessed, an increase of two

11    levels is appropriate.  Because violence or a credible threat

12    to use violence was involved, another two levels are adjusted

13    upwards.  Because an aircraft other than a regularly scheduled

14    commercial air carrier was used, still another two levels are

15    adjusted upwards.  Because you allege to have maintained a

16    premises for the purpose of manufacturing or distributing a

17    controlled substance, another two levels can be adjusted

18    upwards.  Because there were or there will be proof of witness

19    intimidation, tampering of evidence, destruction of evidence,

20    and it lists such activities, as part of a pattern of criminal

21    conduct which you engage in as a livelihood, still another two

22    levels are adjusted upwards.  Because the felony involved also

23    promoted the federal crime of terrorism, another 12 levels are

24    adjusted upwards, and because you were an organizer or a leader

25    of a criminal activity that involved five or more participants

P6PRCARp

or was otherwise extensive, still another four levels could be
adjusted upwards.  Because you abused the position of public
trust in a manner that significantly facilitated the commission
or concealment of the offense, still another two levels is
adjusted upwards, and that would bring you just beyond or the
highest level of the sentencing guidelines.

In addition, Count Three, which is discussed on page 4
of the letter, will impose a 360-month term of imprisonment
required before two sections of the United States Code
consecutive to the imprisonment for Counts One, Two and Four.
The entire calculation comes to an offense level of 66, but
since it's higher than 43, anything higher doesn't count.

You have no criminal history points.  You were in
criminal history category VI because of the offensive nature of
these offenses.  All of this brings you to a mandatory minimum
sentence of 20 years to be followed by an additional mandatory
minimum term of 30 years or 50 years and a maximum of life.  So
my discretion is between 50 years and life, not a very happy
discretion for anybody.  Do you understand all this?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And you've discussed it with Mr. Feitel,
have you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Plus, the possibility of a fine between
$50,000 and $10 million.  Plus supervised release in the terms

P6PRCARp

<table>
<tr><td>1</td><td>that Mr. Bradley read out, which is something that happens</td></tr>
<tr><td>2</td><td>after you finish your term of sentence.  There are conditions</td></tr>
<tr><td>3</td><td>attached.  If you breach one of those conditions or more, a</td></tr>
<tr><td>4</td><td>hearing can take place, and you could be sent to jail even</td></tr>
<tr><td>5</td><td>again.  Do you understand all of this?</td></tr>
<tr><td>6</td><td>THE DEFENDANT:  Yes, your Honor.</td></tr>
<tr><td>7</td><td>THE COURT:  And also, the prospect of deportation</td></tr>
<tr><td>8</td><td>after you finish your jail term.  Do you understand?</td></tr>
<tr><td>9</td><td>THE DEFENDANT:  Yes, your Honor.</td></tr>
<tr><td>10</td><td>THE COURT:  There will be a sentencing hearing, if you</td></tr>
<tr><td>11</td><td>plead guilty and I accept the plea, about three to four months</td></tr>
<tr><td>12</td><td>from now at which time I will consider all of this and decide</td></tr>
<tr><td>13</td><td>the appropriate sentence to give to you.  At that time, you and</td></tr>
<tr><td>14</td><td>Mr. Feitel can tell me anything you think is appropriate to be</td></tr>
<tr><td>15</td><td>told, and I will take all of that into consideration.</td></tr>
<tr><td>16</td><td>Now, Mr. Feitel, you've heard Mr. Bradley's comments</td></tr>
<tr><td>17</td><td>about what he has to prove and how he can prove it.  Do you</td></tr>
<tr><td>18</td><td>believe that Mr. Bradley can prove a *prima facie* case on each</td></tr>
<tr><td>19</td><td>of these four counts against your client?</td></tr>
<tr><td>20</td><td>MR. FEITEL:  Yes, your Honor, and I consulted with my</td></tr>
<tr><td>21</td><td>client.  We believe the government can prove a *prima facie* case</td></tr>
<tr><td>22</td><td>on the four counts charged.</td></tr>
<tr><td>23</td><td>THE COURT:  And you have no defenses to trump those</td></tr>
<tr><td>24</td><td>proofs?</td></tr>
<tr><td>25</td><td>MR. FEITEL:  No, your Honor.  My client has made what</td></tr>
</table>

P6PRCARp

1    I think is a considered decision to plead guilty to the

2    charges.

3              THE COURT:  Mr. Carvajal, are you offering to plead

4    guilty because you believe that you are, in fact, guilty of

5    each of those four counts?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  At this point, I would ask you to tell me

8    in your own words what causes you to be guilty.  I suspect that

9    you and Mr. Feitel have worked out a statement.  I'll be glad

10   to hear it.

11             MR. FEITEL:  Your Honor, if I might preface my

12   client's statement?

13             THE COURT:  You can sit, Mr. Feitel.

14             MR. FEITEL:  Excuse me, your Honor?

15             THE COURT:  You can sit.

16             MR. FEITEL:  Your Honor is a federal judge.  It's

17   appropriate to stand.

18             THE COURT:  Stand at the podium.

19             MR. FEITEL:  Your Honor, before my client allocutes

20   against himself, I just wanted to let your Honor know that we

21   received the government's *Pimentel* letter.  We recognize it's

22   just a suggestion, but in order to advance whatever possible

23   defenses we have, my client is going to admit to the smallest

24   quantity of evidence necessary to admit guilt for each of four

25   counts in the indictment.

P6PRCARp

1          He's not going to give a very long oration about what

2     it was that he did because we're going to reserve our rights to

3     challenge some of the government's proposed upward adjustments.

4     I just wanted your Honor to know that he's not going to speak

5     in great detail, and I hope that is acceptable with the Court.

6     He is going to admit to the elements of each of the offenses.

7          THE COURT:  I had planned to question him on each of

8     these adjustments.  For example, paragraph 3 mentions

9     450 kilograms of cocaine.

10          MR. FEITEL:  As to that, I would ask your Honor to

11     forgo it.  We want to reserve our rights to challenge.  We are

12     not agreeing to the *Pimentel* letter.  As your Honor suggested,

13     it's just a suggestion from the government.  My client is going

14     to admit to participation in the underlying conspiracy, which

15     is 5 kilograms or more.  I believe that's sufficient in a case

16     where there's not a plea agreement for the Court to accept my

17     client's guilty plea, and I would ask you to do just that

18     without further elaboration at this point.

19          THE COURT:  Which means that I may be faced with a

20     trial at the sentencing stage?

21          MR. FEITEL:  It's impossible to predict precisely.  I

22     don't want to create work, but given some of the mandatories

23     and the way this works out, there may be a resolution.  But at

24     this point, I would like to reserve my client's rights to

25     challenge some of the proposed upward adjustments suggested by

P6PRCARp

1   the government in the *Pimentel* letter, which I believe is

2   appropriate under the circumstances.

3        THE COURT:  The consequence of that is that you change

4   the burden of proof unfavorably to your client.  If the

5   government has to prove all these points at the trial, it has

6   to prove it beyond a reasonable doubt.  But at a *Fatico* hearing

7   in sentencing, the burden of proof is preponderance of the

8   evidence.  So why would you want to defer this contest until

9   the sentencing stage and not do it at trial?

10        MR. FEITEL:  I believe that my client would not be the

11   first defendant, nor will he be the last, who has decided to

12   make this decision.  We discussed the --

13        THE COURT:  Mr. Feitel, I have every respect for you

14   as a lawyer.  I know you.  I know that you work very hard for

15   your clients, and you work intelligently, so I respect your

16   decision.  I'm just pointing this out because you may be giving

17   up an advantage that your client has.

18        MR. FEITEL:  I greatly respect your Honor's comments.

19   I think in balance under the circumstance of this case, this is

20   an appropriate strategy to proceed.  I have participated in

21   other sentencings -- in other guilty plea proceedings rather

22   where there was no plea agreement, and this is the manner that

23   my client and I wish to proceed.  Sufficient evidence to admit

24   to culpability for the essential elements of the offense, as

25   articulated by the government, without an agreement to anything

P6PRCARp

1      more.

2                  THE COURT:  What is the government's position,

3      Mr. Bradley?

4                  MR. BRADLEY:  We agree with Mr. Feitel, your Honor.

5                  THE COURT:  Sorry.  I didn't hear you.

6                  MR. BRADLEY:  We agree with Mr. Feitel, your Honor,

7      specifically that provided the defendant makes a sufficient

8      allocution of the essential elements of the offenses in Counts

9      One through Four, that would be acceptable for the purposes of

10     today's plea.  With regard to the sentencing enhancements, they

11     are, of course, set forth in a *Pimentel*.  The defendant is not

12     agreeing to them, and those sentencing enhancements and their

13     applicability would be proven by a preponderance at sentencing

14     regardless of whether the defendant proceeded to trial.

15                 THE COURT:  What is the government's position going to

16     be with respect to one additional point for acceptance of

17     responsibility on a timely basis?

18                 Let me speak so Mr. Carvajal understands.  One benefit

19     of pleading guilty is that there are potentially three points

20     that are reduced from the calculation of the sentencing

21     guidelines; two or acceptance of responsibility because by

22     pleading guilty, you accept the responsibility of the charges

23     when you decide not to accept them.  That gives you a downward

24     adjustment of two, so it brings your calculation down.  In

25     addition, if you do this on a timely basis and the government

P6PRCARp

```
1    agrees with that; namely, that you do it sufficiently in
2    advance of trial to save the government from the time and
3    burden of preparation, you could possibly get an additional
4    point reduced.  And therefore, I ask Mr. Bradley what is the
5    government's position with regard to that one extra point, the
6    deduction.  Do you understand, Mr. Carvajal?
7              THE DEFENDANT:  Yes, your Honor.
8              MR. BRADLEY:  We're considering that, your Honor, with
9    regard to that last point.  It is a week or less than a week
10   before trial.  I would note that --
11             THE COURT:  That's why I asked you the question.
12             MR. BRADLEY:  Right.  I don't think we have a firm
13   answer on that.  I would note that for the purposes of the
14   guidelines calculations, I wouldn't expect that that final
15   point would change anything.
16             THE COURT:  Right.  OK.  Let's proceed, Mr. Feitel.
17             THE DEFENDANT:  Your Honor, for the first charge, I
18   admit that I conspired with others to possess with the intent
19   to distribute --
20             THE COURT:  I'm afraid I can't hear you, Ms. Hoskins.
21   Can you get a microphone?
22             THE INTERPRETER:  Of course, your Honor.
23             THE COURT:  It might be easier, Ms. Hoskins, if you
24   were to sit closer to the mic.
25             THE INTERPRETER:  Certainly, your Honor.  Beginning
```

P6PRCARp

1   again.

2           THE DEFENDANT:  I admit that I conspired with others

3   to possess with the intent to distribute 5 kilograms or more of

4   cocaine knowingly and with the intention to provide something

5   of value to the group known as FARC, and I knew that the FARC

6   was involved in terrorist activities.

7           As far as the second count --

8           THE COURT:  Before you get to the second count, the

9   indictment alleges that you were director of Venezuela's

10  military intelligence agency known as the Direccion de

11  Inteligencia Militar between 2004 and 2011.  Is that correct?

12          THE DEFENDANT:  Yes, with one proviso, your Honor.

13          THE COURT:  Yes.

14          THE DEFENDANT:  It doesn't change the fundamentals but

15  in 2008, I was transferred to the counterintelligence unit, and

16  the military intelligence agency went fully under the control

17  of another person.

18          THE COURT:  And after 2013, you again became the

19  director of the Direccion de Inteligencia Militar, is that

20  correct?

21          THE DEFENDANT:  No, military counterintelligence,

22  which is something completely different.

23          THE COURT:  OK.  Were you one of the leaders of

24  management that manages the cartel known as Cartel de Los Soles

25  organization in Venezuela?

P6PRCARp

1              MR. FEITEL:  Your Honor, as to this, I would like to

2     object.  These are questions that --

3              THE COURT:  OK.  I accept.

4              MR. FEITEL:  Thank you, your Honor.

5              THE COURT:  Mr. Bradley, is there anything else you

6     want me to do?

7              MR. BRADLEY:  Not as to Count One, your Honor.

8              THE COURT:  I'm ready for Count Two.

9              THE DEFENDANT:  As far as the second count, I admit

10    that I conspired with others to possess with the intent to

11    distribute 5 kilos or more of cocaine knowing and with the

12    intention that the cocaine would be imported illegally to the

13    United States.

14             THE COURT:  Is that satisfactory, Mr. Bradley?

15             MR. BRADLEY:  Yes, as to Count Two, your Honor.

16             THE COURT:  Count Three.

17             THE DEFENDANT:  For Count Three, I admit that

18    knowingly I carried a firearm, that is, a machine gun, in

19    relation to its conspiracies charged in Counts One and Two in

20    this case.

21             THE COURT:  In furtherance of that conspiracy?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Mr. Bradley?

24             MR. BRADLEY:  No additional questions as to Count

25    Three.

P6PRCARp

```
 1              THE COURT:  Sorry?

 2              MR. BRADLEY:  The government is satisfied as to Count

 3    Three.

 4              THE COURT:  Count Four.

 5              THE DEFENDANT:  For Count Four, I admit that I

 6    conspired with others to possess a machine gun as part of the

 7    conspiracy charged in Counts One and Two of my case.

 8              THE COURT:  Mr. Bradley?

 9              MR. BRADLEY:  The government is satisfied as to Count

10    Four.

11              THE COURT:  Do you need anything on venue?

12              MR. BRADLEY:  Two things.  First, with regard to

13    venue --

14              THE COURT:  You can ask Mr. Carvajal.

15              MR. FEITEL:  Your Honor, again, not to interrupt

16    Mr. Bradley, I believe we indicated that we were going to

17    stipulate.  I apologize for interrupting if I stole your

18    thunder.  I'm not sure my client -- I discussed this with him

19    briefly.  But the standard is first brought, and there was no

20    principal argument against somebody else being first brought to

21    this jurisdiction.  We were going to stipulate as to --

22              THE COURT:  You agree there was venue?

23              MR. FEITEL:  Yes, your Honor.  There was no argument

24    to the contrary that I could think to make, so yes.

25              MR. BRADLEY:  My only other related point, your Honor,
```

P6PRCARp

1    as to Count One is that the defendant is not contesting the

2    jurisdictional element as to the narco-terrorism count, which

3    specifically is that after the offense had taken place, an

4    offender was brought to the United States.

5        MR. FEITEL:  We agree to all those.  Those are

6    objective facts, your Honor.

7        THE COURT:  OK.

8        MR. BRADLEY:  And the last point, your Honor, and this

9    is just a little broader, I would just make sure that the

10   defendant understands the Court's authority to order forfeiture

11   and restitution as to each of the counts in the superseding

12   indictment.

13       THE COURT:  Is there any restitution in this case?

14       MR. BRADLEY:  We believe there may be a basis for

15   restitution as to one of the victims, the one that I mentioned

16   had been tortured.  I believe we would have a better

17   understanding of what that amount might be closer to sentenced

18   and the same as to forfeiture as well.

19       THE COURT:  Do you understand, Mr. Carvajal, that if

20   any person is a victim and has injury and the government seeks

21   restitution, there may be an order requiring you to pay

22   restitution to that victim?  Do you understand that?

23       THE DEFENDANT:  Yes.  I understand, your Honor.

24       THE COURT:  And if the government finds any property

25   or money in your possession that are the fruits of a crime or

P6PRCARp

1    the criminal proceeds directly, the government can cause them

2    to be forfeited to the government.  Do you understand that?

3             THE DEFENDANT:  Yes, your Honor.

4             THE COURT:  Mr. Bradley, anything else?

5             MR. BRADLEY:  Not from the government, your Honor.

6             THE COURT:  Mr. Feitel?

7             MR. FEITEL:  No, your Honor.

8             THE COURT:  Mr. Carvajal, I accept your plea of guilty

9    to each of the four counts.  I instruct the clerk to enter the

10   plea of guilty to each of those four counts, and you are

11   adjudged guilty of each of those four counts.  I find that your

12   plea is voluntary, that you understand the consequences, and

13   that there is an independent basis of fact to support each of

14   the four counts and the plea of guilty to each of the four

15   counts.

16             I order a probation report and the preparation of a

17   sentencing report.  If there's an interview with a client, I

18   order that Mr. Feitel be given notice so that he may attend if

19   he or his client wishes him to attend, and I order Mr. Bradley

20   to provide the probation officer with a copy of this allocution

21   prior to any interview.  Sentencing will occur --

22             THE DEPUTY CLERK:  October 1, 2025, at 10:30 a.m.

23             THE COURT:  It's the day before Yom Kippur,

24   Mr. Feitel.

25             MR. FEITEL:  Excuse me, your Honor.

P6PRCARp

1              THE COURT:  It's the day before Yom Kippur.

2              MR. FEITEL:  That would be problematic because I would

3    have to be here and then go back.  More problematic is I have a

4    trial starting the Tuesday after Labor Day.

5              THE COURT:  When would you like to have the

6    sentencing?

7              MR. FEITEL:  Closer to the end of October with a date

8    that is good for your Honor.

9              THE COURT:  Is that OK with you, Mr. Bradley?

10             MR. BRADLEY:  Yes, your Honor.  I think I would just

11   ask, because Mr. Feitel previewed that a *Fatico* seems quite

12   likely, that as long as the Court is prepared to hold an

13   evidentiary hearing during that time.

14             THE COURT:  I have a trial ongoing during that period,

15   so I can't predict, but I'm sure we'll find time for a *Fatico*

16   if one is necessary.

17             MR. BRADLEY:  Understood, your Honor.

18             THE COURT:  Would you like it at the end of October,

19   Mr. Feitel?

20             MR. FEITEL:  Yes, your Honor.

21             THE COURT:  I think we can oblige.

22             THE DEPUTY CLERK:  October 29, 2025, at 10:30 a.m.

23             MR. FEITEL:  That's good for the defense, your Honor.

24             MR. BRADLEY:  And for the government.

25             THE COURT:  Thank you, all.  These proceedings are

P6PRCARp

1    closed.

2            (Adjourned)

3                                    o0o