# Exhibit A

CS:og
WP-327/2

10.b.2.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

(11)

| | |
|---|---|
| MARIUM MUMTAZ,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL H.M. ERSHAD,<br><br>Defendant. | Index No. 74258/89 |

SUGGESTION OF IMMUNITY SUBMITTED BY
THE UNITED STATES OF AMERICA

OTTO G. OBERMAIER, United States Attorney for the Southern District of New York, at the direction of the Attorney General of the United States, pursuant to Section 517, Title 28 of the United States Code, appears herein specially to inform the Court of the diplomatic interest of the United States in the pending litigation, and to suggest to the Court the immunity of General H.M. Ershad, President of People's Republic of Bangladesh, who is the named defendant in this action. In furtherance hereof, the United States respectfully submits the following:

1. The United States of America has an interest and concern in the subject matter and outcome of this action insofar as it involves the question of immunity from the Court's jurisdiction of the head of state of a friendly foreign state. That interest arises from a determination by the Executive Branch of the Government of the United States, in the implementation of its foreign policy and in the conduct of its international relations, that permitting this suit to go forward against General H. M.

CS:og
WP-327/2

Ershad would be incompatable with this country's foreign policy interests. As discussed below, such a determination should be given effect by this Court.

2. The Attorney General has been informed by the Legal Adviser of the United States Department of State that the Government of the People's Republic of Bangladesh formally has requested the Government of the United States to suggest the immunity of General H.M. Ershad from this suit. The Attorney General has been further informed by the Legal Adviser that: "The Department of State recognizes and allows the immunity of President Ershad as Head of State of the People's Republic of Bangladesh." Letter to Richard Thornburgh from Abraham D. Sofaer, dated April 17, 1990 (a copy of which is annexed hereto as Exhibit A).

3. Under customary rules of international law, recognized and applied in the United States, the head of a foreign government is immune from the jurisdiction of United States federal and state courts. See Saltany v. Regan, 702 F. Supp. 319 (D.D.C. 1988), aff'd in relevant part, No. 89-5051 (D.C. Cir. Sept. 29, 1989) (per curiam), petition for cert. filed, No. ____, (U.S. Mar. 22, 1990) (dismissal of complaint as against U.K. Prime Minister Thatcher) (a copy of which is annexed hereto in Appendix); Kline v. Kaneko, 141 Misc. 2d 787, 535 N.Y.S.2d 303 (Sup. Ct. 1988), aff'd mem., sub nom. Kline v. Cordero De La Madrid, 546 N.Y.S.2d 506 (1st Dep't 1989) (dismissal of suit against wife of President of Mexico)(a copy of which is annexed hereto in Appendix); L. Oppenheim, 1

International Law §§ 348, 349 (8th ed. 1955) (a copy of which is annexed hereto in Appendix); G. Hackworth, 2 Digest of International Law §. 170 (1941) (discussion of dismissal of divorce case brought in England against foreign head of state) (a copy of which is annexed hereto in Appendix). The Supreme Court has mandated that the courts of the United States are bound by suggestions of immunity, such as this, which are submitted to the courts by the Executive Branch. Ex Parte Peru, 318 U.S. 578, 588-89 (1943). See also Republic of Mexico v. Hoffman, 324 U.S. 30, 36 (1945). Indeed, in Peru, the Supreme Court, without further review of the Executive's determination, declared that the suggestion of immunity must be accepted by the Judiciary as a "conclusive determination by the political arm of the Government" that the continued retention of jurisdiction would jeopardize the conduct of foreign relations. 318 U.S. at 589; see Spacil v. Crowe, 489 F.2d 614, 617 (5th Cir. 1974). Accordingly, upon filing of a suggestion of immunity such as this, it becomes the "court's duty" to surrender jurisdiction for which immunity has been recognized. Peru, 318 U.S. at 588; see also Hoffman, 324 U.S. at 35.

4. That the courts of the United States are mindful of the Supreme Court's teachings with respect to Executive Branch suggestions of immunity is evidenced by such recent cases as Gerritsen v. De la Madrid CV 85-5020-PAR (C.D. Cal. 1986) (in suit against Mexican President De la Madrid and others for conspiring to deprive plaintiff of constitutional rights, action against De la Madrid dismissed pursuant to suggestion of

immunity) (a copy of which is annexed hereto in Appendix); Estate of Silme G. Domingo v. Marcos, No. C82-1055V (W.D. Wash. 1982) (action alleging political conspiracy by then President Ferdinand E. Marcos and Imelda Marcos, then First Lady of the Republic of the Philippines, and others dismissed against President and Mrs. Marcos pursuant to suggestion of immunity) (a copy of which is annexed hereto in Appendix); Psinakis v. Marcos, No. C-175-1726 (N.D. Cal 1975) result reported in (1975) Digest of United States Practice of International Law, pp. 344-45 (Libel action against Ferdinand Marcos dismissed pursuant to suggestion of immunity) (a copy of which is annexed hereto in Appendix).

5. This traditional and appropriate deference of the judiciary to Executive Branch suggestions of immunity is predicated on "compelling" considerations arising out of the conduct of our foreign relations. Spacil v. Crowe, 489 F.2d at 619. Several reasons support the justification for this deference.

> First, (s)eparation-of-powers principles impel a reluctance in the judiciary to interfere with or embarrass the executive in its constitutioal role as the nation's primary organ of international policy.

Id., citing United States v. Lee, 106 U.S. 196, 209 (1882). See also Peru, 318 U.S. at 588. Second, in comparision with the Executive's institutional resources and extensive experience in the day-to-day conduct of the country's foreign affairs, the Judiciary is ill-equipped to second-guess Department of State determinations that may effect such interests. Spacil, 489 F.2d

CS:og
WP-327/2

Judiciary is "ill-equipped to second-guess" determinations by the United States Department of State that may affect such interests. Spacil, 489 F.2d at 619. Finally, as the Court of Appeals for the Fifth Circuit also observed in Spacil, "[p]erhaps more importantly, in the chess game that is diplomacy, only the executive has a view of the entire board and an understanding of the relationship between isolated moves." Id.

Dated: New York, New York
May 30, 1990

Respectfully submitted,

STUART M. GERSON
Assistant Attorney General

OTTO G. OBERMAIER
United States Attorney for the
Southern District of New York

By: [signature]
Craig A. Stewart
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Tel. No.: (212) 791-9173

OF COUNSEL:

David A. Jones, Jr.
Attorney
United States Department of State
Office of Legal Adviser
Washington, D.C. 20520

10.h.2.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | | |
|---|---|---|
| MARIUM MUMTAZ, | : | |
| Plaintiff, | : | AFFIRMATION OF <u>ABRAHAM D. SOFAER</u> |
| v. | : | |
| GENERAL H. M. ERSHAD, | : | Index 89-74258 |
| Defendant. | : | |

Pursuant to Rule 2106 of the New York Civil Practice Law and Rules, Abraham D. Sofaer hereby affirms and states:

1. I am the Legal Adviser of the Department of State. I have served in this capacity since June 10, 1985. I submit this affirmation to advise the court of the views of the United States Government with respect to the immunity of General H.M. Ershad, the President of the People's Republic of Bangladesh, and, in particular, the implications of this issue for the foreign policy interests of the United States. My affirmation is based on my personal knowledge and on information provided to me in my official capacity.

2. My responsibilities as Legal Adviser include the formulation and implementation of determinations of the United States Government with regard to the immunities of heads of

state and governments. As discussed in the Suggestion of Immunity submitted by the United States in this case, this immunity is established in customary international law, as developed through the practice of sovereign states. Principles of customary international law, as part of the law of nations, have been recognized by U.S. courts as part of U.S. law, absent a controlling federal statute or treaty. See The Paquete Habana, 175 U.S. 677, 700 (1900); L. Henkin, Foreign Affairs and the Constitution 221-23 (1972). There are no federal statutes or treaties on the subject of head of state immunity.

3. The Government of Bangladesh has formally requested, through a diplomatic note to the Department of State on March 20, 1990, that the United States file a suggestion of head of state immunity in this case on behalf of President Ershad.

4. Upon receiving this request, I reviewed the Bangladesh Government's request and the complaint in this case. Based on this review, I concluded that President Ershad, as a sitting head of state, is entitled to head of state immunity. Accordingly, on April 17, 1990, I sent a letter to the Department of Justice requesting that an appropriate suggestion of immunity for President Ershad be filed. A copy of this letter is annexed hereto as Exhibit A.

5. In that letter, I noted that President Ershad is entitled to head of state immunity under customary international law. I also described the particular importance attached by the Department of State to obtaining a prompt dismissal of this suit because of the significant foreign policy implications of such an action against the head of state of a friendly foreign country. The United States must be free to conduct its foreign relations with other states, including those states' highest representatives, in the absence of interference or harassment. The exercise of U.S. judicial power, whether state or federal, over a foreign head of state, absent consent, may cause serious problems in our bilateral relationship with that state. Thus, I made the determination that permitting this case to go forward against President Ershad would be incompatible with this country's foreign policy interests.

6. The Department of State also places particular importance on the appropriate assertion of head of state immunity because of its implication for reciprocal treatment of our President if subject to the jurisdiction of a foreign state. We would clearly expect another state to extend head of state immunity to our President if named as a defendant in a

case similar to this one. The failure to extend such immunity would have a serious adverse effect on our relationship with that state.

I hereby affirm under the penalty of perjury the foregoing is true and correct.

Executed on the 29th day of May, 1990.

Abraham D. Sofaer

# Exhibit B

United Nations A/80/586-S/2026/5

General Assembly
Security Council

Distr.: General
3 January 2026
English
Original: Spanish

**General Assembly**
**Eightieth session**
Agenda items 14, 31, 70, 76, 81, 83, 84, 107 and 109

**Security Council**
**Eighty-first year**

**Culture of peace**

**Prevention of armed conflict**

**Right of peoples to self-determination**

**Responsibility of States for internationally wrongful acts**

**Crimes against humanity**

**Report of the Special Committee on the Charter of the United Nations and on the Strengthening of the Role of the Organization**

**The rule of law at the national and international levels**

**Crime prevention and criminal justice**

**Measures to eliminate international terrorism**

# Identical letters dated 3 January 2026 from the Permanent Representative of the Bolivarian Republic of Venezuela to the United Nations addressed to the Secretary-General and the President of the Security Council

I am writing to you to denounce the armed aggression perpetrated by the United States of America against the Bolivarian Republic of Venezuela, which constitutes a matter with serious implications for regional and international peace and security.

In the early hours of 3 January 2026, United States military forces carried out a series of brutal, unjustified and unilateral armed attacks consisting of the bombing of civilian and military locations in the city of Caracas, capital of the Republic, and other cities in the States of Miranda, Aragua and La Guaira. In addition, United States special forces are carrying out attacks in various parts of the country using helicopters and aircraft.

This flagrant act of aggression, premeditated, acknowledged and publicized by the Government of the United States of America, as had been warned by the Government of the Bolivarian Republic of Venezuela, flagrantly violates the provisions of paragraph 4 of Article 2 of the Charter of the United Nations, which establishes that "All Members shall refrain in their international relations from the

26-00065 (E) 050126 060126

Please recycle

threat or use of force against the territorial integrity or political independence of any state, or in any other manner inconsistent with the Purposes of the United Nations".

The deadly and treacherous military attack by the United States is being carried out against a country that is at peace. This criminal and unjustified attack is unprecedented in more than 200 years of our republican history, with the painful and repulsive exception of the attacks perpetrated by the United Kingdom, Germany and Italy against the Venezuelan coasts in 1902.

The Bolivarian Republic of Venezuela has never broken with its tradition of international peace but, with this despicable attack, the United States of America has confirmed its status as the greatest international aggressor in our region over the last two centuries.

What began more than four months ago as a police fantasy is now showing its true colours: this is a colonial war to destroy our republican form of government, freely chosen by our people, and impose a puppet government that will allow the plundering of our natural resources, including the world's largest oil reserves.

The United States of America always uses lies to fabricate wars. It is an international tyranny imposed through the propaganda of death, as the recent past confirms.

In the light of these circumstances, the Bolivarian Republic of Venezuela reserves its inherent right to self-defence, pursuant to Article 51 of the Charter of the United Nations, in order to protect its population, sovereignty and territorial integrity.

In view of the foregoing, the Bolivarian Republic of Venezuela has requested that, in accordance with the principles of the Charter of the United Nations, the Security Council:

1. Urgently convene an emergency meeting to discuss the acts of aggression perpetrated by the United States of America against the Bolivarian Republic of Venezuela.

2. Condemn the aggression of the United States of America against the people and Government of the Bolivarian Republic of Venezuela.

3. Request the cessation of armed attacks by the United States of America against the Bolivarian Republic of Venezuela.

4. Establish the appropriate measures to hold the Government of the United States of America accountable for the crimes of aggression committed against the Bolivarian Republic of Venezuela.

Lastly, I respectfully request that this communication be duly brought to the attention of the States Members of the General Assembly and issued as a document of that body under agenda items 14, 31, 70, 76, 81, 83, 84, 107 and 109.

(*Signed*) Samuel Reinaldo **Moncada Acosta**
Ambassador
Permanent Representative of the Bolivarian Republic of Venezuela to the United Nations

# Exhibit C

United States Department of State

*Washington, D.C. 20520*

MAR 19 2001

Mr. Stuart E. Schiffer
Acting Assistant Attorney General
Civil Division
U.S. Department of Justice
Washington, D.C. 20530

Dear Mr. Schiffer:

Henry Leutwyler et al. v. Queen Rania Al Abdullah, et al. (Case No. 00 CIV 5485(GEL) is a civil action pending in the United States District Court for the Southern District of New York.

Queen Rania is the spouse of the King of Jordan, the sitting Head of State of Jordan. She resides in his household and often accompanies him on official travel. On September 27, 2000, the Government of Jordan formally requested that the Government of the United States suggest the immunity of Queen Rania.

The Department of State recognizes and allows the immunity of Queen Rania in this suit. Under customary rules of international law, recognized and applied in the United States, the Queen is immune from the jurisdiction of the United States courts in this case. Accordingly, the Department of State requests that the Department of Justice submit to the district court an appropriate Suggestion of Immunity in this case with respect to the actions against Queen Rania.

This letter recognizes the importance attached by the United States to ensuring the immunity of the Queen in view of the foreign policy implications of allowing this action against the spouse of a foreign Head of State to proceed.

The United States, by submitting a Suggestion of Immunity in this case, would not be taking a position on the merits of the underlying suit.

Sincerely,

James H. Thessin
Acting Legal Adviser

cc: Vincent Garvey, Esq.
Federal Programs Branch

David Jones, Esq.
U.S. Attorney's Office
Southern District/NY